BURT SAMUELS et al., Appellants, v. E. SMITH et al., Appellees.

**FRAUD:** Acts Constituting—Honest Opinion. An honest and good-faith expression of implicit confidence in the desirability of an investment is necessarily no fraud.

*Appeal from Fremont District Court.*—EARL PETERS, Judge.

DECEMBER 11, 1923.

SUITS in equity, to rescind certain subscription contracts for corporation stock and certain promissory notes given in payment therefor, and to recover from the defendant money previously paid on such contracts, and to recover from all the defendants the damages thus sustained, on the ground that all participated in a fraudulent conspiracy to defraud the respective plaintiffs. The defendants answered severally, in general denial. Some of them also filed cross-petitions, to recover upon promissory notes held by them against certain of the plaintiffs. The trial court dismissed the petition, and entered judgment upon the cross-petitions in favor of the cross-petitioners. The respective plaintiffs have appealed.—*Affirmed.*

*Wilson & Keenan, Vernon Johnson, M. L. Donovan,* and *North & Pollock,* for appellants.

*Tinley, Mitchell, Ross & Mitchell, Thornell & Thornell, H. M. Bartlett, J. F. Devitt, Fradenburg & Mathews,* and *Kelsey & Rice,* for appellees.

EVANS, J.—The record herein includes the record in the trial of three equity suits brought by the three plaintiffs respectively against the same defendants. By agreement of the

parties in the court below, they were all tried and submitted upon the same evidence, though the issues were not wholly identical in the three cases. The result is that we have a very complicated and voluminous record. The fighting issues in the case are those of fact, rather than of law, and the problem presented to us is to reach a satisfactory conclusion upon the facts of the case.

In the summer of 1919, each of these plaintiffs became a purchaser of capital stock in a newly organized corporation known as the Missouri Valley Cattle Loan Company. This company was being organized as a purported successor to the McNish Cattle Company, a going concern, which seemed to have established a good reputation in the financial world. The stock of this new concern was floated energetically by promoting agents of experience, and was sold in large blocks, with abundant promises of future profits. Its headquarters were in Omaha. Its manager was the former manager of the McNish Company. A certain partnership firm known as the Missouri Valley Finance Company was appointed as its so-called fiscal agent. Their compensation was 25 per cent of the proceeds of all stock sales. When a sufficient amount of stock had been sold, the company, under its existing management, purported to buy all the assets of the McNish corporation at a grossly inflated price. This excessive cost of promotion and this ex-parte sale to the new corporation of the McNish assets doubtless accounts for the insolvency of the corporation, which was disclosed within a few months after its embarkation upon the field of public confidence. The defendant Nishna Valley State Bank was a going concern in the town of Riverton, from which the respective plaintiffs borrowed money, for the purpose of buying corporation stock. Defendant Smith was the cashier of the bank; Cowden was its president; Armstrong was a stock-selling agent, who sold the stock to the plaintiffs. Frank Hess was a retired farmer, who was employed by Armstrong to transport him over the highway in his stock-selling business in that locality. H. W. Huttig Company was a brokerage firm at Muscatine, Iowa, which purchased many of the notes given by the new stockholder, and which later negotiated such notes to third parties. Bartlett was a practicing lawyer at Muscatine, who purchased

from the Huttig Company two of such notes, only one of which is involved in this controversy. Bartlett had no acquaintance with any other parties to the suit except Huttig. Huttig had no acquaintance with any of the other parties except the manager of the corporation. The suit of the plaintiffs is primarily against the Missouri Valley Cattle Loan Company, to rescind their stock subscriptions and to recover the money paid and the notes delivered in payment therefor. This company having been adjudged a bankrupt in the early months of 1920, the plaintiffs are without practical remedy as against it. They therefore ask a remedy of cancellation of their notes in the hands of the Nishna Valley State Bank and in the hands of Smith and in the hands of Bartlett, on the ground that these parties participated in a fraudulent conspiracy to defraud them. The notes originally held by the defendant bank were given for money borrowed. These notes were transferred by the bank to defendant Smith, its cashier. Smith purchased these notes in recognition of his obligation to protect the bank, because the loans were made through his agency as cashier. Smith filed a cross-petition upon a $5,000 note, as against Hopkins; and upon a $1,500 note, as against Edgerton; and upon two notes in a total sum of about $5,300, as against Samuels. Bartlett filed a cross-petition upon a $1,500 note, as against Edgerton.

The real ultimate question in the case is whether Smith and Bartlett were conspirators, or whether they participated in the fraud from which these respective plaintiffs suffered. The volume of plaintiffs' evidence is directed largely against Smith, who was cashier of the bank. The respective plaintiffs were customers of the bank, and claimed to have been influenced by Smith alone into their disastrous undertakings. It may be stated broadly that Smith was either a fraudulent actor in the scheme or else he was himself a dupe thereof. If he were a mere dupe thereof, his conduct even then might act quite as influentially on the respective plaintiffs as if he were acting with fraudulent intent. In such a case, he would be occupying common ground with the plaintiffs themselves, and would not be liable to them for their losses, even though his attitude may have influenced them to their injury. The trial court found that Smith had not been guilty of bad faith towards these plain-

tiffs.   A careful study of this complicated record leads us to approve such finding.   In view of our concurrence with the finding of the trial court, it will serve no useful purpose that we deal herein with details of the evidence.   The proper limits of an opinion would not permit it.

The appeals do not seem to be prosecuted as against Armstrong or Huttig or the Huttig Company or the Missouri Valley Cattle Loan Company.   None of these have made any appearance to the appeal; nor do the appellants direct their argument as against these defendants.   The only appellees who have made appearance here are Smith, Cowden, Hess, the Nishna Valley State Bank, and Bartlett.   We confine our consideration of the record, therefore, to the respective rights of the appellants as against these appellees.   The theory put forward by the appellants is that Smith accepted employment and compensation from the Missouri Valley Cattle Loan Company; that he thereby entered a fraudulent conspiracy to defraud the appellants; and that, pursuant thereto, he induced them, through fraudulent representations, to purchase the stock in question. The claim made against the Nishna Valley State Bank is predicated upon the charges made against Smith, its cashier, and to some extent upon similar charges made against Cowden, the president of the bank.   Both Smith and Cowden became purchasers of the corporation stock about the middle of July, 1919. Their attention was first directed to the corporation by an advertisement.   They were seeking a desirable investment.   They both made a rather diligent investigation of the standing of this corporation in the city of Omaha.   They found that the company bore a good reputation with and obtained ready credit from the leading banks of that city.   This reputation was rather a reflection of that of its predecessor, the McNish Cattle Loan Company, which was supposed to have been a very successful enterprise.   As a result of this investigation, both Smith and Cowden bought, on their own initiative, at par, $5,000 worth of corporation stock.   In these purchases, neither of them received any concessions whatever.   Shortly thereafter, they purchased from this corporation commercial paper for the Nishna Valley State Bank, to the amount of $17,500.   The immediate stimulus to this purchase was that the bank had on hand cash

reserves of approximately $100,000, upon which it was paying interest to depositors, and for which there was an inadequate demand at home. After the investment of Smith and Cowden, stock-selling agents sold the stock to the respective appellants. The fact that Smith and Cowden were owners of stock was undoubtedly utilized by these agents, and the fact that Smith (Cowden being absent from the state for several weeks following his purchase) freely professed confidence in the investment and so answered all inquiries made to him, was undoubtedly influential. The crucial question is whether there was any bad faith on Smith's part in such profession of confidence. A careful reading of the record satisfies us that Smith had implicit confidence in the desirability of the investment; that he never assumed any relation of agency to the corporation or its fiscal agent; that he never received, directly or indirectly, any compensation of any character; that he never profited, directly or indirectly, by any sale of stock made; and that, on the contrary, he was a heavy loser personally as a stockholder, having acquired altogether more than $7,000 worth of the stock. The trial court properly held that he was guilty of no bad faith or wrongful conduct of any kind in relation to the appellants. Nor does the evidence implicate Cowden in any act of bad faith. He purchased first a block of $5,000 worth of stock, and later bought another block of $5,000 worth from Kish, a purchaser who wanted to sell. Cowden paid par for all that he bought, without any concessions whatever. He never profited in any manner out of any of the transactions of the corporation with the appellants or with others. He too had lost his investment, as completely as the appellants had lost theirs. We find very little in the record which has any tendency to show the far-reaching conspiracy pleaded by the appellants and insisted upon in argument here. Still less is the showing that these answering appellees participated in any such conspiracy.

The notes of these plaintiffs held by the Nishna Valley State Bank represented actual loans to the full amount of the notes. No valid defense thereto is disclosed herein. Smith, as the present holder, is, therefore, entitled to recover thereon on his cross-petition.

The defendant Bartlett was a resident of Muscatine, a

stranger to all the other defendants except Huttig. Through Huttig, he became a purchaser of two notes from the Missouri Valley Cattle Loan Company, one of which was the Edgerton note. That he became a holder thereof in due course and in the best of faith is proved beyond cavil. The judgment on his cross-petition was, therefore, proper. The decree below is, accordingly, affirmed.—*Affirmed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.